# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## WICHITA DIVISION

| | |
|---|---|
| HOWARD COX, LORENE COX, JOHN W. OLANDER, GENERAL PARTNER of the OLANDER FAMILY LIMITED PARTNERSHIP, RICHARD E. CLEM, DONALD A. SHORE, HAROLD R. WATSON, AND RICHARD J. WATSON, HIGH PLAINS, INC. (INTERVENOR) for themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> SPRINT COMMUNICATIONS COMPANY L.P., QWEST COMMUNICATIONS COMPANY, LLC, AND LEVEL 3 COMMUNICATIONS, LLC, <br><br> Defendants. | Civil Action No. 6:10-cv-01262-KGG |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON PLAINTIFFS' MOTION FOR AWARD OF ATTORNEY'S FEES AND EXPENSES TO SETTLEMENT CLASS COUNSEL**

Under Federal Rules of Civil Procedure 23(h)(1) and 54(d)(2), Plaintiffs in this class action have moved for an award of attorney's fees and expenses to Settlement Class Counsel. Under Rule 23(h)(3), the Court must make findings of fact and state its conclusions of law. The Court does so, as follows, in granting the motion:

## Findings of Fact

1.      This class-action settlement resolves a property-rights dispute, which arises out of the installation of fiber-optic cable on railroad rights of way by Sprint Communications Company L.P., Qwest Communications Company, LLC f/k/a Qwest Communications Corporation, and Level 3 Communications, LLC (the "Settling Defendants"). The claims

resolved by the Settlement affect parcels of land in Kansas covering approximately 384 miles of

rights of way throughout the state.

2.      On March 8, 2012, the Court entered an order preliminarily approving the

settlement, certifying the settlement class, and approving the form and manner of notice.  On

July 31, 2012, the claims administrator mailed notices to 3,730 current and prior property owners

along railroad rights of way in Kansas containing telecommunications facilities installed by the

Settling Defendants, and opened a settlement call center and website.  The notice, which was

posted on the website, advised in pertinent part:

> The Court will decide how much Class Counsel and any other lawyers will be
> paid.  Class Counsel will ask the Court for attorneys' fees, costs and expenses of
> $1,001,000. . . .  The Defendants will separately pay these fees and expenses and
> the payment will not reduce the benefits available for the Class.

Notice at 8.  The Notice further advised that the Court would hold a Fairness Hearing on

November 14, 2012, at which time the Court would "consider how much to pay Class Counsel."

*Id*. at 9.  Following publication of the class notice, no class members objected to the proposed

award of attorneys' fees and expenses.  On November 14, 2012, the Court held the final Fairness

Hearing.

3.      The Settlement Agreement provides in pertinent part:  "Settlement Class Counsel

may seek from the Court a cash award of fees and expenses from the Settling Defendants, in an

amount not to exceed the Maximum Attorneys' Fee Award, to which the Settling Defendants

will not object."  Settlement Agreement § II.E.1.  The Settlement Agreement defines the

Maximum Attorneys' Fee Award as $1,001,000.  Settlement Agreement Definitions.  The

Settlement Agreement further provides that "the Settling Defendants shall deposit any attorneys'

fee award approved by the Court, which shall not exceed the Maximum Attorneys' Fee Award,

into the interest-bearing escrow account established with U.S. Bank in New York, New York, no

later than ten (10) days after the date on which the Order and Judgment becomes Final."

Settlement Agreement § II.E.2.

4.     The escrow account established with U.S. Bank is a Qualified Settlement Fund

within the meaning of Treasury Regulation § 1.468B.  The escrow account is maintained by U.S.

Bank in New York, New York, with the Garretson Firm Resolution Group, Inc. ("GFRG")

serving as the Fund Administrator.  These arrangements are consistent with the terms of an

Escrow Agreement entered into as of August 26, 2011 between Settlement Class Counsel, U.S.

Bank, and GFRG.

5.     Settlement Class Counsel estimate that a minimum of $2,471,000 in cash benefits

are available for class members to claim.  Administrative costs — to be paid separately by the

Settling Defendants — in creating and updating a sophisticated database to notify class members,

implement the Settlement, and process claims, are estimated at an additional $321,000.  The

agreed-to attorney's fees and non-taxable costs of approximately $1,001,000 — which will not

reduce benefits payable to class members — bring the total gross value of the Settlement to

roughly $3,793,000.

## Conclusions of Law

6.     Rule 23(h) provides that, "[i]n a certified class action, the court may award

reasonable attorney's fees and nontaxable costs that are authorized by . . . the parties'

agreement."  The Rule further provides that "[a] claim for an award must be made by motion

under Rule 54(d)(2)," notice of which must be "directed to class members in a reasonable

manner" and that the Court "must find the facts and state its legal conclusions under Rule 52(a)."

Fed. R. Civ. P. 23(h)(1) and (3).  In turn, Rule 54(d)(2) requires a claim for fees to be made by

motion, and specifies its timing and content, including, in relevant part, "the grounds entitling the

movant to the award" and "the amount sought."  Fed. R. Civ. P. 54(d)(2)(B).  Notice of this fee-award motion was provided in the class notice and on the website.

7.      "In class actions, the district court has broad authority over awards of attorneys' fees." *Law v. Nat'l Collegiate Athletic Ass'n*, 4 F.Appx. 749, 751 (10th Cir. 2001) (citation omitted).  In common fund cases like this one, the Tenth Circuit applies a "'hybrid' approach, combining the percentage fee method with the specific factors traditionally used to calculate the lodestar."  *Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir.1994).  "Under either methodology, the fee awarded must be reasonable."  *Id*. at 482 (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 853 (10th Cir.1993); *Brown v. Phillips Petroleum Co.,* 838 F.2d 451, 453 (10th Cir.), *cert. denied,* 488 U.S. 822 (1988)).  "There are recognized advantages and disadvantages with each method, although the more recent trend has been toward utilizing the percentage method in common fund cases."  *Id*. at 483.  Indeed, "*Uselton* implies a preference for the percentage of the fund method.  In all cases, whichever method is used, the court must consider the twelve . . . factors" set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974).[1]  *Id*.

---

[1] The twelve *Johnson* factors are:  (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  "[R]arely are all of the *Johnson* factors applicable."  *Uselton*, 9 F.3d at 854. The applicable *Johnson* factors are addressed generally herein and in our preliminary-approval brief.  More recent Tenth Circuit and Supreme Court precedent in fee-shifting cases casts doubt on the continuing relevance of the *Johnson* factors.  *See Anchondo v. Anderson, Crenshaw & Assocs.,* 616 F.3d 1098, 1103 (10th Cir. 2010) ("In *Perdue* the Court appears to significantly marginalize the twelve-factor *Johnson* analysis") (*citing Perdue v. Kenny A. ex rel. Winn,* 130 S.Ct. 1662, 1673 (2010)).

8.      The Court adopts the percentage-of-the-fund approach, and finds that, under it,

the agreed-to fee-and-expense request is reasonable as a matter of law.  Here, Settlement Class

Counsel estimate that, based on the miles of rights of way covered by the Settlement, if each

class member were to claim the available cash benefits, approximately $2,471,000 would be paid

to qualifying class members, assuming that no land-grant class members seek the higher non-

land grant benefits.  (To the extent those class members do seek and receive the higher amounts,

the amount available to the class will increase.)  When estimated administrative costs of

$321,000 — to be borne by the Settling Defendants — and the agreed-to attorneys' fees and

expenses of $1,001,000— also to be paid separately by the Settling Defendants — are factored

in, the gross value of the Settlement is approximately $3,793,000.  The $1,001,000 fee-and-

expense award therefore represents 26 percent of the fund as a whole.

9.      At 26 percent of the value of the fund as a whole, the fee-and-expense award

would be well within the range of reasonable percentage-fee awards in this Circuit.  *See Lucken*

*Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.*, Civil Action No. 09-cv-01543-REB-

KMT, 2010 WL 5387559, at *5-*6 (D. Colo. Dec. 22, 2010) ("The customary fee awarded to

class counsel in a common fund settlement is approximately one third of the total economic

benefit bestowed on the class.") (citing, inter alia, *Vaszlavik v. Storage Technology Corp.,* 2000

U.S. Dist. LEXIS 21140, at *10 (D. Colo. Mar. 9, 2000) ("requested fee of 30% of the settlement

is well within the ordinary range of common fund awards," and "[a] 30% common fund award is

in the middle of the ordinary 20%-50% range and is presumptively reasonable"); *Cimarron*

*Pipeline Construction, Inc. v. National Council on Compensation,* Nos. CIV 89-822-T, CIV 89-

1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting that "[f]ees in the range of

30-40% of any amount recovered are common in complex and other cases taken on a contingent

fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit").  The 26-percent fee-and-expense award is especially reasonable here, where, in reaching the Settlement, Settlement Class Counsel engaged in unusually lengthy and hard-fought litigation.  In the nine similar right-of-way settlements that have received final approval, the federal district courts in Idaho, Illinois, Alabama, North Dakota, Montana, Michigan, Minnesota, Virginia and Vermont approved fee-and-expense awards to class counsel ranging from 17 to 26 percent of the then-estimated fund.

10.     In terms of lodestar, the overlapping nature of fiber-optic-cable right-of-way discovery, motions practice, research, litigation, and settlement efforts across the country for more than a decade — which culminated in this and the other state settlement agreements — have prevented Settlement Class Counsel from segregating their fees and expenses into a "Kansas-only" category or similar categories for other states.  *See* Declaration of Settlement Class Counsel Dan Millea ¶ 16; Declaration of Settlement Class Counsel Irwin Levin ¶ 22. Nonetheless, it is apparent that the Kansas fee-and-expense request is amply supported by a lodestar crosscheck based on the time and expense incurred, and fees available, in resolution of all the state-by-state settlements of the fiber-optic-cable right-of-way litigation.

11.     The total attorneys' fees and expenses incurred by Settlement Class Counsel in the decade-plus of right-of-way litigation culminating in this Settlement, excluding local counsel fees and expenses, were just over $60,000,000 as of March 31, 2011; that number has since increased as Settlement Class Counsel have performed substantial work in seeking approval of the settlements in courts around the country, and it will continue to do so until the settlements are fully administered.  *See* Millea Decl. ¶ 17; Levin Decl. ¶ 23.  The Settling Defendants in the

right-of-way litigation have agreed to pay a total of $41,500,000 in attorneys' fees and expenses

in settlement of the forty-six state actions (and the District of Columbia) nationwide.  Millea

Decl. ¶ 17; Levin Decl. ¶ 23.  Therefore, the incurred fees and expenses are subject to a *negative*

*multiplier* — roughly .70 — on a nationwide basis and with a pro-rata Kansas allocation.

      12.      Here, there were no objections to the proposed fee-and-expense award.  *See*

*Anderson v. Merit Energy Co.*, Civil Nos. 07-cv-00916-LTB-BNB, 07-cv-01025-REB-MJW,

2009 WL 3378526, at *4 (D. Colo. Oct. 20 2009) ("The absence of any Class members'

objection is an additional factor that supports this Court's approval of the requested attorneys'

fees.") (citations omitted); *Ramah Navajo Chapter v. Norton*, 250 F. Supp. 2d 1303, 1305

(D.N.M. 2002) (recognizing "the absence of any objections to the application for an award of

attorney's fees and costs" and approving application).  Here, the Court-approved notice stated

that, at the conclusion of the fairness hearing, counsel would seek a fee-and-expense award up to

$1,001,000.  The notice also informed class members of their ability to object to the fee request.

No class member objected to it.  The absence of objections or disapproval by class members to

Settlement Class Counsel's fee-and-expense request further supports finding it reasonable.

      **WHEREFORE** it is **ORDERED** that the motion for an award of attorney's fees and

expenses to Settlement Class Counsel is **GRANTED**.

      It is further **ORDERED** that the Court approves a fee-and-expense award of $1,001,000

to Settlement Class Counsel,

      It is further **ORDERED** that the Settling Defendants shall deposit the fee-and-expense

award approved by the Court into the interest-bearing escrow account — established as a

Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B and as a trust

under state law — with U.S. Bank in New York, New York, no later than ten (10) days after the

date on which the Order and Judgment becomes Final, that any alleged or actual civil liability against the Settling Defendants for attorneys' fees arising out of the tort claims resolved by the Kansas Class Settlement Agreement approved by this Court is satisfied and extinguished through the Settling Defendants' payment of the fee-and-expense award, and that any interest earned on the escrow account shall be recognized as gross income of the Qualified Settlement Fund; and

It is further **ORDERED** that appointment of GFRG as the Fund Administrator for the escrow account is hereby confirmed and that the escrow account shall be governed by the Escrow Agreement entered into as of August 26, 2011 between Settlement Class Counsel, U.S. Bank, and GFRG.

Date: November 14, 2012                           S/ KENNETH G. GALE
                                                  Honorable Kenneth G. Gale
                                                  United States Magistrate Judge